UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS DIVISION
DEL RIO DIVISION

| | | |
|---|---|---|
| BERTHA ALICIA FERNANDEZ-LOPEZ, CARLOS ALFREDO RAMIREZ-FERNANDEZ, AND JESUS LAMBERTO RAMIREZ-LOPEZ, | § § § § § | |
| Plaintiffs | § § | |
| V. | § § | CIVIL ACTION NO. _____ (JURY TRIAL DEMANDED) |
| GILBERTO HERNANDEZ, EPIGMENIO RODRIGUEZ, EDWIN REYES, HERNANDEZ DEMOLITION & REMEDIATION, LLC, SLR LABOR WORKS, LLC, CHAMELEON LANDSCAPING AND IRRIGATION, INC., | § § § § § § § | |
| Defendants | § § § | |

ORIGINAL COMPLAINT

I.

PRELIMINARY STATEMENT

1.1     This is an action for damages and declaratory relief brought by Mexican citizens who were solicited, recruited, and hired in Mexico for employment in the United States by means of false pretenses, representations, or promises; who were unlawfully ordered to pay kickbacks to their employer which were deducted from their paychecks unlawfully lowering wages; who were compelled to work by means of threats and unlawful confiscation of immigration documents, and whose admission into the United States was procured through fraud in the H-2B Visa guest worker program.

1

1.2     Plaintiffs' claims stem from Defendants' employment practices during 2015 and 2016.  Plaintiffs assert claims pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq. In addition, Plaintiffs bring claims pursuant to the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1589 et seq. Plaintiffs also bring state law claims for breach of contract and fraud.

II.

JURISDICTION

2.1     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1337 (interstate commerce); 8 U.S.C. § 1329 (INA); 18 U.S.C. § 1595 (TVPRA); and 18 U.S.C. § 1964 (RICO).

2.2     This Court also has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because the claims are so related to the federal claims that they form part of the same case or controversy.

2.3     Declaratory relief is authorized pursuant to 28 U.S.C. §§ 2201 and 2202.

III.

VENUE

3.1     Venue is proper in the Del Rio Division of the Western District of Texas pursuant to 28 U.S.C. § 1391 and 18 U.S.C. § 1965 (RICO).

IV.

PARTIES

*Plaintiffs*

4.1     Plaintiffs Bertha Alicia Fernandez-Lopez, Carlos Alfredo Ramirez-Fernandez, and Jesus Lamberto Ramirez-Lopez are three non-immigrant temporary H-2B guest workers from Mexico who primarily read and speak Spanish.

4.2     Plaintiffs were lawfully admitted to the United States from Mexico as temporary guest workers using an H-2B Visa pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(B).

*Defendants*

4.3     Defendant Gilberto Hernandez is a natural person who resides in Alabama. He is an organizer, member, and/or owner of Hernandez Demolition & Remediation, LLC. He may be served with process at 19 Minor Hill Rd., Hartselle, AL 35640.

4.4     Epigmenio Rodriguez is a natural person who resides in the United States and/or Mexico. He conducts business under the name SLR Labor Works, LLC. He may be served with process at 476 South Bibb Avenue #521, Eagle Pass, TX 78852.

4.5     Edwin Reyes is a natural person who resides in Hyattsville, Maryland. He may be served with process at 7742 Decatur Road, Hyattsville, MD 20784.

3

4.6     Hernandez Demolition & Remediation, LLC, is an Alabama Limited Liability Company. It may be served with process by serving its registered agent, Zuleika P. Hernandez, at 19 Minor Hill Rd., Hartselle, AL 35640.

4.7     SLR Labor Works, LLC, is or was a Texas Limited Liability Company. It may be served with process by serving registered agent Epigmenio Rodriguez at 476 South Bibb Avenue #521, Eagle Pass, TX 78852.

4.8     Chameleon Landscaping and Irrigation, Inc., is or was a Maryland Corporation. It may be served with process by serving its President, Edwin Reyes, at 7742 Decatur Road, Hyattsville, MD 20784.

V.

FACTUAL ALLEGATIONS

***Background on Relevant Guestworker Statutes***

5.1     The Immigration and Nationality Act establishes the program commonly known as "H-2B," which authorizes temporary visas for guest workers hired to perform temporar labor or services in non-agriculture industries.  *See* 8 U.S.C § 1101(a)(15)(H)(ii)(b).

5.2     Employers file a document titled Application for Temporary Employment Certification, Form ETA-9142B ("H-2B application"), with the Department of Labor ("DOL").  *See* 20 C.F.R. § 655.15. An employer signs Form ETA-9142B, declaring under "penalty of perjury" that "I have read and reviewed this application and that to the

4

best of my knowledge the information contained therein is true and accurate," and any attempt "to aid, abet, or counsel" anyone in submitting any false information in this application is a felony.

5.3     The H-2B application must show that (1) there are not enough workers in the U.S. that are qualified and available to perform the work offered; and (2) that the employment of H-2B workers will not adversely affect the wages and working conditions of U.S. workers. *See* 20 C.F.R. § 655.1(a).

5.4     At the same time the H-2B application is submitted, the employer submits a job order to the State Workforce Agency.  *See* 20 C.F.R. § 655.16.  The job order must state certain facts pertaining to the offered employment, including but not limited to the employer's name and contact information; the geographic area of intended employment and where applicants will live while performing the work; any deductions the employer intends to make from the worker's paycheck which are not required by law; details on how the worker will be reimbursed for transportation to the worksite if the worker completes 50% of the contract; that the employer will pay for return transportation; that the employer will reimburse the worker in the first workweek for all fees related to obtaining a visa and border crossing.  *See* 20 C.F.R. § 655.18(b).

5.5     An employer can contract with a labor contractor to file the H-2B application and conduct recruitment of workers; in this case the contractor and employer become joint employers.  However, an application submitted by joint employers must clearly identify both employers by name and the worksite locations where workers will perform labor.  *See* 20 C.F.R. § 655.19(e)(2).  Furthermore, each application can only

seek workers in a single area of intended employment. 20 C.F.R. § 655.19(a).  Each

employer that signs the application assumes responsibility for the accuracy of the

representations in the application and for the responsibilities of an employer.  20 C.F.R. §

655.19(d)(2).

5.6     After the DOL approves the H-2B application and job order, and an

employer shows no U.S. workers are available to perform the work, the employer can file

Form I-129, Petition for Nonimmigrant Worker, with U.S. Citizenship and Immigration

Services ("USCIS"), in order to obtain visas.

5.7     An H-2B visa is only valid to permit the alien beneficiary—the H-2B

worker—to enter and work for the petitioning employer, in the specific position

described in the H-2B Application for Temporary Employment Certification.

### *Defendants' Participation in a Racketeering Enterprise and Recruitment of Plaintiffs*

5.8     Defendant Gilberto Hernandez is the organizer and owner, member, or

director of Hernandez Demolition & Remediation, LLC.

5.9     Defendant Epigmenio Rodriguez is or was the owner and director of SLR

Labor Works, LLC.  He has worked under the name "SLR Labor Works" as recently as

2018.

5.10    Gilberto Hernandez, Epigmenio Rodriguez, Edwin Reyes, Hernandez

Demolition & Remediation, LLC, SLR Labor Works, LLC, Chameleon Landscaping and

Irrigation, Inc., Frio Turf Farms, Ltd., and Robert Flores formed a racketeering enterprise

which is dedicated to the pursuit of organized criminal conduct. This enterprise pursued

organized criminal conduct in the form of visa fraud, fraud in foreign labor contracting,

forced labor, unlawful conduct with respect to documents in furtherance of trafficking,

peonage, slavery, involuntary servitude, or forced labor, and trafficking with respect to

peonage, slavery, involuntary servitude, or forced labor. All are considered racketeering

activity indictable under 18 U.S.C. §§ 1546, 1351, 1589, 1592, and 1590, respectively.

5.11    Defendants Edwin Reyes and Chameleon Landscaping and Irrigation, Inc.,

at various times relevant to this complaint associated with the aforementioned RICO

enterprise.

5.12    Defendants formed this RICO enterprise to recruit and employ vulnerable

temporary workers from Mexico for employment with Hernandez Demolition &

Remediation, LLC. Hernandez Demolition & Remediation, LLC, is in the business of

providing temporary guest workers for work in construction and demolition at multiple

jobsites throughout Alabama and the Southeastern United States. Gilberto Hernandez,

owner, member, and/or director of Hernandez Demolition & Remediation, LLC, would

coerce the temporary workers' continued employment by unlawfully charging them

kickbacks to be repaid by paycheck deductions, through threats and confiscation of their

immigration documents. Gilberto Hernandez and Hernandez Demolition & Remediation,

LLC made money through the unlawful paycheck deductions and shared these proceeds

with other members of the RICO enterprise.

5.13    On or about April, 2015, Defendant SLR Labor Works, LLC, of Eagle

Pass, Maverick County, Texas, submitted an H-2B application, with case number H-400-

15091-765212, on behalf of Defendants Chameleon Landscaping and Irrigation, Inc, and Edwin Reyes. Hereinafter, this document will be referred to as "Defendants' H-2B application." Defendant Edwin Reyes and an agent of Defendant SLR Labor Works signed the document under penalty of perjury.

5.14   Defendants' H-2B application sought 50 groundskeepers; for a period of employment beginning on April 15, 2015, and ending November 1, 2015; promising 40 hours of work per week with a work schedule of 8:00 a.m. to 5:00 p.m.; with pay of $13.56 per hour. The work would be performed only in the area of 7462 Railroad Ave., Suite 202, Harmans, Anne Arundel County, MD 21077. The Application did not mention transportation, nor did it specify any deductions to be made from the workers' paychecks. The Maryland Workforce Exchange recruited United States workers for the forgoing job opportunities using job order number 376042 which was active from February 24, 2015, to March 10, 2015. The job opportunities were also advertised in the Capital Gazette on March 5, 2015, and March 8, 2015. On April 10, 2015, William L. Carlson of the U.S. Department of Labor, Office of Foreign Labor Certification, certified the H-2B Application as valid from April 15, 2015 to November 1, 2015. These job terms formed a binding contract between the employer and workers recruited to fill the H-2B visa job opportunities.

5.15   Defendant Edwin Reyes in his capacity as President of Chameleon Landscaping and Irrigation, Inc., declared under penalty of perjury that he read and reviewed the H-2B application and that to the best of his knowledge the information contained therein is true and accurate. Edwin Reyes, Chameleon Landscaping and

Irrigation, Inc., Epigmenio Rodriguez, and SLR Labor Works, LLC, knew this declaration to be false. It was done to procure H-2B visas for foreign guest workers to be placed with employers outside the area of intended employment listed in the H-2B Application. With regards to the instant proceedings, these declarations were made to procure H-2B visas for the Plaintiffs to be placed with Gilberto Hernandez and Hernandez Demolition & Remediation, LLC, to do construction and demolition work in multiple jobsites throughout Alabama and the Southeastern United States. This constitutes visa fraud indictable pursuant to 18 U.S.C. § 1546.

5.16    In connection with these visa applications, Gilberto Hernandez and Epigmenio Rodriguez as described below used materially false or fraudulent pretenses, representations or promises to solicit, recruit, and hire Plaintiffs as foreign guest workers from Mexico for purpose of employment in the United States. This constitutes fraud in foreign labor contracting indictable pursuant to 18 U.S.C. § 1351.

5.17    Once they had obtained the visas, Defendants used the fraudulently obtained H-2B visas to bring the Plaintiffs into the United States.

5.18    In or around August 2015, Gilberto Hernandez called Plaintiff Jesus Lamberto Ramirez-Lopez stating that he had work and visas for him and his wife, Plaintiff Bertha Alicia Fernandez-Lopez, his son, Plaintiff Carlos Alfredo Ramirez-Fernandez, and two others. He further stated that another person would be calling him with additional instructions.

5.19    Around three days after Gilberto Hernandez called Plaintiffs, Epigmenio Rodriguez contacted Plaintiffs with instructions of when and where to report for visa processing.

5.20    Soon after this call, Carlos Alfredo Ramirez-Fernandez, along with two other people departed from Sinaloa, Mexico, for Nuevo Laredo, Tamaulipas, Mexico. In Nuevo Laredo, Carlos Alfredo Ramirez-Fernandez and the two others met Defendant Epigmenio Rodriguez, who guided them through the visa process and made travel arrangements by bus from Laredo, Texas, to Birmingham, Alabama. The travel arrangements cost around $180 and were paid for by Gilberto Hernandez. These were later deducted from their wages. Carlos Alfredo Ramirez-Fernandez did not pay any money to Epigmenio Rodriguez. Carlos Alfredo Ramirez-Fernandez entered Laredo, Texas, on August 3, 2015.

5.21    About a week after Carlos Alfredo Ramirez-Fernandez departed Sinaloa, Mexico, Jesus Lamberto Ramirez-Lopez received another call from Gilberto Hernandez telling him that another three workers should get ready to come to the U.S. and that he would be called for additional instructions. A day or two later Jesus Lamberto Ramirez-Lopez received a call from Epigmenio Rodriguez giving him instructions about reporting to Nuevo Laredo. A few days later, Jesus Lamberto Ramirez-Lopez and his wife, Bertha Alicia Fernandez-Lopez flew from Sinaloa to Monterrey, Nuevo Leon. From Nuevo Leon, they traveled to Nuevo Laredo, where they were met by Epigmenio Rodriguez who facilitated their processing at the U.S. Consulate and made transportation arrangements from Laredo, Texas, to Birmingham, Alabama. Gilberto Hernandez paid $180 for each

bus ticket that was later deducted from their wages. The members of the group paid nothing to Epigmenio Rodriguez. Jesus Lamberto Ramirez-Lopez and Bertha Alicia Fernandez-Lopez entered Laredo, Texas, on August 13, 2015.

5.22    In Nuevo Laredo, Epigmenio Rodriguez disclosed terms and conditions of employment prior to interviews with U.S. Consulate Officials. He instructed Plaintiffs to tell Consulate officials that they would earn $12 per hour. They were not to mention any fees. Epigmenio Rodriguez further instructed Plaintiffs to never mention Gilberto Hernandez, and to say that they would be working in Landscaping. He told them not to speak to anybody once they entered the United States. Epigmenio Rodriguez warned Plaintiffs that failure to follow these instructions would result in them not receiving their visas.

5.23    At all points during the recruitment process, Plaintiffs knew that they would be working for Gilberto Hernandez. Plaintiffs believed that Edwin Reyes and Chameleon Landscaping and Irrigation, Inc., was a business associate of Gilberto Hernandez. At all points during Plaintiffs' employment until the expiration of their visas, Plaintiffs believed that they had valid H-2B visas.

5.24    At no point during the recruitment process were Plaintiffs told about any recruitment fees or kickbacks.

5.25    Plaintiffs were all in Mexico when they were recruited by Gilberto Hernandez and Epigmenio Rodriguez.

5.26    Plaintiffs Jesus Lamberto Ramirez-Lopez, Bertha Alicia Fernandez-Lopez, and Carlos Alfredo Ramirez-Fernandez each spent about 20,000 pesos or $1,050 before arriving in Laredo, Texas. Some Plaintiffs borrowed money from BanCoppel in Mexico at 15% interest rates to pay for these costs.

5.27    On or about August 27, 2015 Gilberto Hernandez called a meeting of the Plaintiffs who were now in Alabama. At the meeting Gilberto Hernandez informed the group that they each owed him $5,000. Gilberto Hernandez stated that this fee was for payments made to the recruiter at the border, Epigmenio Rodriguez. Even though recruitment fees are not to be passed on to H-2B workers without prior notice, Gilberto Hernandez described this $5,000 as a "debt," which each worker would have to pay off before returning home to Mexico.  Gilberto Hernandez told each worker that the $5,000 would be collected through payroll deductions. Plaintiffs had not previously been made aware, through the H-2B application or any other source, that there would be any deductions from their regular paychecks. This amounts to unlawful kickbacks. See, 20 C.F.R. § 655.20(c).

5.28    Soon after this meeting, Gilberto Hernandez confiscated Plaintiffs' passports to make copies of the passports. He further confiscated Know-Your-Rights booklets Plaintiffs received at the United States Consulate, which contained phone numbers to call if their rights had been violated. This confiscation of passports constituted unlawful conduct with respect to documents in furtherance of trafficking, peonage, slavery, involuntary servitude, or forced labor, indictable pursuant to 18 U.S.C. § 1592.

12

*2017 Visa Fraud in Furtherance of the Racketeering Enterprise*

5.29   Epigmenio Rodriguez has engaged in ongoing recruitment to further the affairs of the RICO enterprise.

5.30   On or about August, 2017, Defendant SLR Labor Works, LLC, of Eagle Pass, Maverick County, Texas submitted an H-2A application, with case number H-300-17226-922386, on behalf of Frio Turf Farms, Ltd. Hereinafter, this document will be referred to as "H-2A application." Robert Flores, as owner of Frio Turf Farms, Ltd., signed the document under penalty of perjury.

5.31   This application sought 10 farm workers; for a period of employment beginning on October 15, 2017, and ending August 15, 2018; promising 45 hours of work per week with a work schedule of 8:00 a.m. to 6:00 p.m.; with pay of $11.59 per hour. The work would be performed only in the area of 7944 Highway 57, Pearsall, Frio County, Texas 78061. The application did not mention transportation, nor did it specify any deductions to be made from the workers' paychecks. The Texas Workforce Commission recruited United States workers for the forgoing job opportunities using job order number TX8557481 which was active from August 7, 2017, to March 3, 2018. The job opportunities were also advertised in the Uvalde Leader News. On August 30, 2017, a certifying officer of the U.S. Department of Labor, Office of Foreign Labor Certification, certified the H-2B Application as valid from October 15, 2017 to August 15, 2018. These job terms formed a binding contract between the employer and workers recruited to fill the H-2A visa job opportunities.

5.32     Robert Flores, in his capacity as Owner of Frio Turf Farms, Ltd., declared under penalty of perjury that he read and reviewed the H-2A application and that to the best of his knowledge the information contained therein is true and accurate. Epigmenio Rodriguez and SLR Labor Works, LLC, submitted this application knowing this declaration to be false. It was done to procure H-2A visas for foreign guest workers to be placed with Hernandez Demolition & Remediation, LLC, outside the area of intended employment listed in the H-2A application. This constitutes a second count of visa fraud indictable pursuant to 18 U.S.C. § 1546.

5.33     These actions show the materially false or fraudulent pretenses, representations or promises used by Epigmenio Rodriguez and Gilberto Herenandez to solicit, recruit, and hire foreign guest workers from Mexico for purpose of employment in the United States.

***Seizure of Plaintiffs' Passports and Threats Against Plaintiffs***

5.34     As stated in paragraph 5.28, after Plaintiffs arrived in Alabama, Gilberto Hernandez confiscated Plaintiffs' passports.

5.35     Gilberto Hernandez kept the passports for a period of two to three weeks. He was forced to return the passports to Plaintiffs when they went to work at a jobsite in Mobile, Alabama.

5.36     At all points of time while Gilberto Hernandez held the passports, Plaintiffs felt vulnerable and felt that they could not travel long distances.

14

5.37    Gilberto Hernandez was verbally abusive —constantly yelling at Plaintiffs, swearing at them, calling them names, saying they were worthless, and otherwise humiliating them.

5.38    Gilberto Hernandez often threatened Plaintiffs by telling them that if they tried to leave, he would report them to immigration and the police, and stated that Plaintiffs would be sent to jail.

5.39    Gilberto Hernandez also told them that if any Plaintiff tried to escape without telling him, they would end up in jail.

5.40    Gilberto Hernandez also threatened Plaintiffs by telling them that if they tried to leave, he would make sure they would never be able to work in the United States in the future.

5.41    As set forth in paragraph 5.27 above, Gilberto Hernandez charged Plaintiffs $5,000 each.

5.42    Gilberto Hernandez threatened Plaintiffs by telling them that they could not leave until the debt was paid or Gilberto Hernandez would call the police and Plaintiffs would be sent to jail and then be deported.

5.43    As set forth in paragraphs 5.37-5.40, 5.42, and 5.69-5.71, Gilberto Hernandez knowingly obtained or provided the labor of Plaintiffs by means of serious harm or threats of serious harm to Plaintiffs themselves and/or other persons.

5.44    As set forth in paragraphs 5.38-5.40, and 5.42, Gilberto Hernandez knowingly obtained or provided the labor of Plaintiffs by means of the abuse or threatened abuse of the law or legal processes.

5.45    As set forth in paragraphs 5.37-5.42, and 5.69-5.71, Gilberto Hernandez's verbal abuse, harassment, and threats constituted a scheme, plan, or pattern intended to cause the Plaintiffs to believe that, if Plaintiffs did not perform such labor or services, that Plaintiffs would suffer serious harm, physical restraint, or incarceration.

5.46    Gilberto Hernandez's employment of Plaintiffs using the means mentioned in paragraphs 5.43-5.45 constituted forced labor, indictable pursuant to 18 U.S.C. § 1589.

5.47    The working conditions, including significant underpayment of wages promised and owed, dilapidated housing, seizure of passports, threatened abuse of the legal process including threats to call immigration and the police which would result in imprisonment and deportation, and forced labor constituted a material breach by Defendants of their employment contract and working arrangement with Plaintiffs.

5.48    Epigmenio Rodriguez, Edwin Reyes, SLR Labor Works, LLC, and Chameleon Landscaping and Irrigation, Inc., knowingly or in reckless disregard of this venture's participation in forced labor, knowingly financially benefitted by participating in a venture, along with Gilberto Hernandez, that involved receiving Plaintiffs' forced labor. This also constituted an indictable violation of 18 U.S.C. § 1589.

5.49    Epigmenio Rodriguez and Gilberto Hernandez recruited Plaintiffs knowing that Gilberto Hernandez would coerce Plaintiffs' continued labor by confiscating their passports and threatening them with immigration consequences. Thus, their recruitment efforts constituted trafficking with respect to peonage, slavery, involuntary servitude, or forced labor, indictable pursuant to 18 U.S.C. § 1590.

***Working Conditions and Pay***

5.50    Hernandez Demolition & Remediation, LLC, is in the business of providing temporary guest workers as labor to other companies.

5.51    Plaintiffs worked at multiple worksites in Alabama, including Tuscaloosa, Birmingham, Mobile, and Decatur.

5.52    Plaintiffs generally stayed in Decatur, Alabama and traveled to the worksites. For a period of one and a half months between early to mid September and ending around mid to late October, Plaintiffs worked and stayed in Mobile, Alabama.

5.53    When in Decatur, Alabama, Plaintiffs were required to live in Gilberto Hernandez's residence in Decatur, Alabama. The house was extremely overcrowded. Around ten workers including Plaintiffs, Gilberto Hernandez and his wife, and Gilberto Hernandez's mother lived together in the house. Seven to eight men lived in one room, and most of them slept on the floor. Bertha Alicia Fernandez-Lopez and Jesus Lamberto Ramirez-Lopez slept on a mattress in the living room floor until Gilberto Hernandez's mother returned to Mexico. When Plaintiffs moved in, members of a crew who had worked for Gilberto Hernandez for years moved out of the house.

5.54    During Plaintiffs' stay in Decatur, when there was no work Gilberto Hernandez forced the Plaintiffs to do general work around the house such as cutting grass, gathering trash, and making house repairs. Bertha Alicia Fernandez-Lopez cleaned the house when there was no work. Plaintiffs were not paid for any of these activities.

5.55    When Plaintiffs worked in Mobile, Alabama, due to the prolonged stay Gilberto Hernandez rented a dilapidated apartment for Plaintiffs and other workers.

5.56    Some of the workers, including Bertha Alicia Fernandez-Lopez, worked as part of the demolition crew, and had to obtain licenses to work with asbestos, lead, and/or mold. Gilberto Hernandez paid for the license but deducted more than the amount paid for the license from their paychecks. The H-2B application stated that no special training or licenses would be required for any worker under the contract.

5.57    Gilberto Hernandez did not provide Plaintiffs with timesheets, check stubs, or wage statements.

5.58    When Plaintiffs were in Decatur, they were usually paid in cash. The amount of cash received was what Gilberto Hernandez said was left after he had taken deductions. When Plaintiffs were in Mobile, Alabama, they were paid by check, which they had to cash at a bank. When paid by check, Gilberto Hernandez would deduct social security taxes from the paycheck.

5.59    Jesus Lamberto Ramirez Lopez received checks made out to him in amounts of up to $1,200, but only received cash in amounts of $400-$500. Gilberto Hernandez stated that he kept the rest as payment on the alleged debt or kickback.

5.60     Bertha Alicia Fernandez-Lopez earned around $600 per week. $250 out of each paycheck was deducted and collected by Gilberto Hernandez as payment on the alleged $5,000 recruitment fee or kickback.

5.61     Carlos Alfredo Ramirez-Fernandez saw checks made out to him in the amounts of up to $700 but would only receive cash in the amounts of $300-$400. Gilberto Hernandez collected the rest as payment on the alleged $5,000 recruitment fee or kickback.

5.62     Carlos Alfredo Ramirez-Fernandez bought a van so that the group had a way to move around. Gilberto Hernandez found him a van for $1,000 and financed it for him. Carlos Alfredo Ramirez-Fernandez ultimately paid $1,700 to Gilberto Hernandez for the van. Before Carlos Alfredo Ramirez-Fernandez left to return home, Gilberto Hernandez took the van back and re-sold it to Jesus Lamberto Ramirez-Lopez for $2,500.

5.63     Plaintiffs frequently asked Gilberto Hernandez how close they were to paying off the $5,000. Gilberto Hernandez would not answer, and instead would get very angry. He repeatedly referred to the $5,000 as a debt that they had to work to pay off.

5.64     As set forth in paragraph 5.26 above, Plaintiffs had to pay for their own transportation from their home to Laredo, Texas, and Defendants did not reimburse Plaintiffs for their expense.

5.65     As set forth in paragraphs 5.20-5.21, Defendants charged Plaintiffs $180 dollars for the bus tickets from Laredo, Texas, to Birmingham, Alabama, by deducting it from Plaintiffs' wages.

*Misrepresentations Regarding Visa Extensions*

5.66    As November 1, 2015, the expiration date of the visas, approached, Plaintiffs informed Gilberto Hernandez that they would return to Mexico because they did not want to be out of status. Plaintiffs feared that staying beyond the visa expiration date could prevent them from obtaining visas in the future.

5.67    Upon hearing this, Gilberto informed the group that he would get them visa extensions.

5.68    On or about early November, after the visas had expired, Plaintiffs, namely Jesus Lamberto Ramirez-Lopez, told Gilberto they were leaving on November 5, 2015. This way they would have time to leave the country during the 10 day discretionary grace period which ended on November 11, 2015.

5.69    When Plaintiffs told this to Gilberto Hernanez, Gilberto Hernandez became extremely angry about them leaving. Plaintiffs became fearful due to Gilberto Hernandez's aggressive response.

5.70    Gilberto Hernandez insisted to Plaintiffs that the extensions were in the mail and at they should arrive any day.

5.71    Because of Gilberto Hernandez's furious response and his insistence that extensions were in the mail, some Plaintiffs stayed beyond the end of the discretionary grace period November 11, 2015.

5.72     On information and belief, Gilberto Hernandez never applied for extensions for Plaintiffs, nor were any such extensions ever granted.

5.74     Gilberto Hernandez made these representations with the intent that Plaintiffs act on these representations. He made these representations so that he could continue to obtain their labor beyond the period afforded by the H-2B visa.

5.75     Plaintiffs relied on his representations and continued working for him after their visas expired. Carlos Alfredo Ramirez-Fernandez continued working for Gilberto Hernandez until November, 2015. Jesus Lamberto Ramirez-Lopez and Bertha Alicia Fernandez-Lopez continued working for Gilberto Hernandez until February, 2016.

5.76     Defendants' conduct was malicious, oppressive, and in reckless disregard of Plaintiffs' rights.

5.77     All actions and omissions complained of herein were undertaken by Defendants directly or through their authorized agents and employees acting within the scope of their authority.

VI.

CLAIMS FOR RELIEF

FIRST CLAIM—RICO

6.1     Plaintiffs reassert and incorporate by reference paragraphs 1.1 to 5.82 of this Complaint.

6.2     Defendants Gilberto Hernandez, Epigmenio Rodriguez, SLR Labor Works, LLC, and Edwin Reyes are "persons" as defined by RICO, 18 U.S.C. § 1961(3).

6.3      Gilberto Hernandez, Epigmenio Rodriguez, Edwin Reyes, Hernandez Demolition & Remediation, LLC, SLR Labor Works, LLC, Chameleon Landscaping and Irrigation, Inc., and Frio Turf Farms, Ltd., formed a RICO "enterprise" as defined by RICO, 18 U.S.C. § 1961(4). They formed this enterprise as an "association-in-fact."

6.4     Defendants Gilberto Hernandez, Epigmenio Rodriguez, Edwin Reyes, and SLR Labor Works, LLC, conducted or participated or conspired to conduct or participate in the conduct of the enterprises' affairs, affecting interstate or foreign commerce, through a pattern of racketeering activity, consisting of multiple acts indictable under 18 U.S.C. § 1546 (Visa fraud), 18 U.S.C. § 1351 (fraud in foreign labor contracting), 18 U.S.C. § 1589 (forced labor), 18 U.S.C. § 1592 (unlawful conduct with respect to documents in furtherance of trafficking, peonage, slavery, involuntary servitude, or forced labor), and 18 U.S.C. § 1590 (trafficking with respect to peonage, slavery, involuntary servitude, or forced labor), contrary to 18 U.S.C. § 1962(c) and (d).

6.5     As a direct, intended and foreseeable result of Defendants' violation of RICO, Plaintiffs have suffered an identifiable and distinct injury to their business or property interests in the form of lost wages, travel expenses, and other damages.

6.6     As a result of Defendants' violation of RICO, Plaintiffs suffered injury and are entitled to recover threefold the damages be sustained, the costs of suit, including a reasonable attorney's fee. 18 U.S.C. § 1964(c).

SECOND CLAIM—TVPRA

COUNT I: TVPRA – FORCED LABOR

6.7     Plaintiffs reassert and incorporate by reference paragraphs 1.1 to 5.82 of this Complaint.

6.8     It is unlawful to obtain the labor or services of a person (1) by threats of serious harm to, or physical restraint against, that person or another person; (2) by means of any scheme, plan, or pattern intended to cause the person to believe that if the person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint; or (3) by means of the abuse or threatened abuse of law or the legal process. 18 U.S.C. § 1589.

6.9     It is further unlawful to knowingly benefit, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in paragraph 6.8, knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means.

6.10    In 2015, Defendants Gilberto Hernandez and Hernandez Demolition & Remediation, LLC, subjected Plaintiffs to forced labor in violation of 18 U.S.C. § 1589.

6.11    In violation of 18 U.S.C. § 1589, Defendants knowingly provided and/or obtained the labor and services of Plaintiffs by means of serious harm or threats of serious harm to Plaintiffs; by means of the abuse or threatened abuse of the law or legal

processes; and by using a scheme, plan, or pattern that was intended to coerce and did coerce Plaintiffs to believe that they or their relatives would suffer serious harm if they were to leave Defendants' employment.

6.12    To coerce Plaintiffs into continuing to work for Defendants, Defendants falsely threatened to report Plaintiffs to the police, threatened Plaintiffs with adverse immigration consequences for leaving Defendants' employment, threatened Plaintiffs that they would go to jail if they left, and deceived Plaintiffs in a manner that constitutes an abuse of the legal process under 18 U.S.C. § 1589.

6.13    Defendants Gilberto Hernandez, Epigmenio Rodriguez, Edwin Reyes, SLR Labor Works, LLC, and Chameleon Landscaping and Irrigation, Inc., benefitted financially by participating in a venture which has engaged in providing or obtaining forced labor, knowing or in reckless disregard of the fact that this venture had engaged in such practices.

6.14    Plaintiffs suffered damages on account of Defendants' violations of 18 U.S.C. § 1589.

6.15    Pursuant to 18 U.S.C. § 1595, Plaintiffs are entitled to recover damages, including punitive damages, for Defendants' violations of 18 U.S.C. § 1589, plus costs and reasonable attorney's fees.

COUNT II: TVPRA – TRAFFICKING WITH RESPECT TO PEONAGE, SLAVERY, INVOLUNTARY SERVITUDE, OR FORCED LABOR

6.16    Plaintiffs reassert and incorporate by reference the allegations set forth above.

6.17    It is illegal under 18 U.S.C. § 1590 to knowingly recruit, harbor, transport, provide, or obtain by any means, any person for labor or services in violation of TVPRA, 18 U.S.C. §§ 1581 et seq.

6.18    Defendants Gilberto Hernandez, Epigmenio Rodriguez, Edwin Reyes, Hernandez Demolition & Remediation, LLC, Chameleon Landscaping and Irrigation, Inc, and SLR Labor Works, LLC, violated 18 U.S.C. § 1590 when they knowingly recruited, harbored, transported, provided, or obtained by any means, persons for labor in violation of the TVPRA, 18 U.S.C. §§ 1589 (forced labor) and 1592 (unlawful conduct with respect to documents in furtherance of trafficking, peonage, slavery, involuntary servitude, or forced labor).

6.19    Plaintiffs suffered damages on account of Defendants' violations of 18 U.S.C. § 1590.

6.20    Pursuant to 18 U.S.C. § 1595, Plaintiffs are entitled to recover damages, including punitive damages, for Defendants' violations of 18 U.S.C. § 1592, plus costs and reasonable attorney's fees.

COUNT III: TVPRA – UNLAWFUL CONDUCT WITH RESPECT TO DOCUMENTS IN FURTHERANCE OF TRAFFICKING AND FORCED LABOR

6.21    Plaintiffs reassert and incorporate by reference the allegations set forth above.

6.22    It is illegal under 18 U.S.C. § 1592 to knowingly destroy, conceal, remove, confiscate, or possess the immigration documents of an individual in the course of violating, or with the intent to violate, 18 U.S.C. §§ 1589–1590.

6.23    Defendants Gilberto Hernandez and Hernandez Demolition & Remediation, LLC, violated 18 U.S.C. § 1592 when they knowingly confiscated and possessed Plaintiffs' passports and visas in order to obtain Plaintiffs' coerced labor and services.

6.24    Plaintiffs suffered damages on account of Defendants' violations of 18 U.S.C. § 1592.

6.25    Pursuant to 18 U.S.C. § 1595, Plaintiffs are entitled to recover damages, including punitive damages, for Defendants' violations of 18 U.S.C. § 1592, plus costs and reasonable attorney's fees.

COUNT IV: TVPRA – BENEFITTING FINANCIALLY FROM PEONAGE, SLAVERY, AND TRAFFICKING IN PERSONS

6.26    Plaintiffs reassert and incorporate by reference the allegations set forth above.

6.27    It is illegal under 18 U.S.C. § 1593A to knowingly benefit, financially or by receiving anything of value, from participation in a venture which has engaged in any

act in violation of TVPRA, 18 U.S.C. §§ 1581 et seq, knowing or in reckless disregard of the fact that the venture has engaged in such violation.

6.28    Defendants Gilberto Hernandez, Hernandez Demolition & Remediation, LLC, Epigmenio Rodriguez, Edwin Reyes, SLR Labor Works, LLC, and Chameleon Landscaping and Irrigation, Inc., benefitted financially by participating in a venture which has engaged in acts in violation of TVPRA, knowing or in reckless disregard of the fact that this venture had engaged in such acts.

6.29    Plaintiffs suffered damages on account of Defendants' violations of 18 U.S.C. § 1593A.

6.30    Pursuant to 18 U.S.C. § 1595, Plaintiffs are entitled to recover damages, including punitive damages, for Defendants' violations of 18 U.S.C. § 1592, plus costs and reasonable attorney's fees.

## COUNT V: TVPRA – UNLAWFUL CONDUCT WITH RESPECT TO IMMIGRATION DOCUMENTS

6.31    Plaintiffs reassert and incorporate by reference the allegations set forth above.

6.32    It is illegal under 18 U.S.C. § 1597 to destroy, conceal, remove, confiscate, or possess the immigration documents of an individual in the course of violating or with the intent to violate 18 U.S.C. § 1351 or in the course of maintaining, preventing, or restricting the labor of an individual without lawful authority.

6.33     Defendants Gilberto Hernandez and Hernandez Demolition &
Remediation, LLC, violated 18 U.S.C. § 1597 when they knowingly confiscated and
possessed Plaintiffs' passports and visas without lawful authority in order to maintain and
restrict Plaintiffs labor and services and in the course of violating or with the intent to
violate 18 U.S.C. § 1351.

6.34     Plaintiffs suffered damages on account of Defendants' violations of 18
U.S.C. § 1597.

6.35     Pursuant to 18 U.S.C. § 1595, Plaintiffs are entitled to recover damages,
including punitive damages, for Defendants' violations of 18 U.S.C. § 1597, plus costs
and reasonable attorney's fees.

COUNT VI: TVPRA – GENERAL PROVISIONS

6.36     Plaintiffs reassert and incorporate by reference the allegations set forth
above.

6.37     Under 18 U.S.C. § 1594(b), whoever conspires with another to violate 18
U.S.C. §§ 1581, 1583, 1589, 1590, or 1592 shall be punished in the same manner as a
completed violation of such section.

6.38     Defendants Gilberto Hernandez, Epigmenio Rodriguez, Edwin Reyes,
Hernandez Demolition & Remediation, LLC, SLR Labor Works, LLC, and Chameleon
Landscaping and Irrigation, Inc., conspired to violate 18 U.S.C. §§ 1589, 1590, and
1592.

28

6.39     Plaintiffs suffered damages on account of Defendants' violations of 18 U.S.C. §§ 1589, 1590, and 1592.

6.40     Pursuant to 18 U.S.C. § 1594, all Defendants who participated in the conspiracy should be equally liable for damages arising from the violations of 18 U.S.C. §§ 1589, 1590, and 1592.

THIRD CLAIM -- CONTRACT

6.41     Plaintiffs reassert and incorporate by reference paragraphs 1.1 to 5.60 of this Complaint.

6.42     Edwin Reyes and Chameleon Landscaping and Irrigation, Inc., offered employment and Plaintiffs accepted employment on specific terms and conditions.

6.43     Defendants Edwin Reyes and Chameleon Landscaping and Irrigation, Inc., entered into employment contracts with Plaintiffs. Plaintiffs were fully prepared to perform their obligations under the respective contracts.

6.44     Defendants Edwin Reyes and Chameleon Landscaping and Irrigation, Inc., unlawfully breached the contracts of employment entered into by the parties by failing to comply with the promised terms and conditions of employment.

6.45     As a direct consequence of Defendant's breach of the employment contracts, Plaintiffs suffered economic and financial loss.

6.46    Defendants Edwin Reyes and Chameleon Landscaping and Irrigation, Inc., are liable to Plaintiff for their actual, incidental, and consequential damages, and for costs and attorney's fees pursuant to Tex. Civ. Prac. & Rem. Code §§ 38.001 et seq.

FOURTH CLAIM -- FRAUD

6.47    Plaintiffs reassert and incorporate by reference paragraphs 1.1 to 5.60 of this Complaint.

A. FRAUD IN H-2B VISA JOB ORDER

6.48    On or around April, 2015, Defendants Edwin Reyes and Chameleon Landscaping and Irrigation, Inc., made representations on an H-2B Visa application with case number H-400-15091-765212, regarding terms and conditions of employment. This application and its corresponding job order formed a contract between Defendants and Plaintiffs.

6.49    Defendants' representations on the H-2B Visa application and job order regarding terms and conditions of employment were material to Plaintiffs.

6.50    Defendants' representations on the H-2B Visa application and job order regarding the terms and conditions of employment were false.

6.51    Defendants knew the representations were false or made the representations recklessly without knowledge of the truth.

6.52     Defendants made the representations on the H-2B Visa application and job order regarding terms and conditions of employment with the intent that Plaintiffs act on the representations.

6.53     Plaintiffs relied on Defendants' representations on the H-2B Visa application and job order.

6.54     Plaintiffs' reliance on Defendants' representations caused Plaintiffs injury.

B. FRAUDLENT REPRESENTATIONS BY GILBERTO HERNANDEZ AND EPIGMENIO RODRIGUEZ IN MEXICO

6.55     On or around August, 2015, Defendants Gilberto Hernandez and Epigmenio Rodriguez made representations to Plaintiffs regarding terms and conditions of employment, directly and/or indirectly.

6.56     Defendants' representations regarding terms and conditions of employment were material to Plaintiffs.

6.57     Defendants' representations regarding the terms and conditions of employment were false.

6.58     Defendants knew the representations were false or made the representations recklessly without knowledge of the truth.

6.59    Defendants made the representations regarding the terms and conditions of employment with the intent that Plaintiffs act on the representations.

6.60    Plaintiffs relied on Defendants' representations.

6.61    Plaintiffs' reliance on Defendants' representations caused Plaintiffs injury.

C. FRAUDULENT CONCEALMENT OF UNLAWFUL KICKBACK

6.62    On or around August, 2015, when Defendants Gilberto Hernandez and Epigmenio Rodriguez made representations to Plaintiffs regarding terms and conditions of employment, they concealed or failed to disclose the fact that each Plaintiff would owe an alleged debt of $5,000 to Gilberto Hernandez.

6.63    This fact was within the knowledge of Gilberto Hernandez and Epigmenio Rodriguez.

6.64    Gilberto Hernandez and Epigmenio Rodriguez knew that Plaintiffs were ignorant of the alleged debt and did not have an equal opportunity to discover the truth.

6.65    Defendants intended to induce Plaintiffs to take some action by concealing or failing to disclose the alleged debt or kickback.

6.66    Plaintiffs suffered injury as a result of acting without knowledge of the undisclosed fact.

FRAUDULENT REPRESENTATIONS REGARDING H-2B VISA EXTENSIONS

6.67     On or around late October, 2015, and early November, 2015, Defendant Gilberto Hernandez made representations to Plaintiffs regarding extensions for their H-2B visas.

6.68     The representation regarding H-2B Visa extensions were material to plaintiffs.

6.69     The representations made by Defendant Gilberto Hernandez regarding H-2B Visa extensions were false.

6.70     When Defendant made the representations regarding the H-2B Visa extensions, he knew the representations were false or made the representations recklessly without knowledge of the truth.

6.71     Defendant Gilberto Hernandez made the representations regarding the H-2B Visa extensions with the intent that Plaintiffs act on the representations.

6.72     Plaintiffs relied on Defendant's representations.

6.73     Plaintiffs' reliance on Defendants' representations caused Plaintiffs injury.

6.74     Plaintiffs are entitled to recover actual damages, mental anguish damages, exemplary damages, prejudgment and post judgment interest, and reasonable court costs for their injuries resulting from these fraudulent representations and omissions.

VII.

PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that this Court:

7.1     Cite the Defendants to appear and answer herein;

7.2     Declare that Defendants violated the rights of Plaintiffs under RICO, TVPRA, breached their contracts of employment with Plaintiffs, and defrauded Plaintiffs as alleged above;

7.3     Award Plaintiffs threefold their damages for violations of their rights under RICO;

7.4     Award Plaintiffs actual damages, and punitive damages for violations of their rights under TVPRA;

7.5     Award Plaintiffs their actual, incidental, and consequential damages resulting from Defendants' breach of their respective contracts;

7.6     Award Plaintiffs their actual damages, mental anguish damages, and exemplary damages for fraud;

7.7     Award Plaintiffs reasonable attorneys' fees and court costs;

7.8     Award Plaintiff prejudgment and post-judgment interests; and

7.9     Award Plaintiffs such other relief as this Court deems just and proper.

Respectfully Submitted,

TEXAS RIOGRANDE LEGAL AID, INC.


BY:_____/s/ Javier Riojas_____
Javier Riojas
Attorney-in-Charge
Texas Bar No. 16935830
542 E. Main Street
Eagle Pass, TX 78852
Tel: (830) 752-6400
Fax: (830) 773-5806
Email: JRiojas@TRLA.ORG

Vianey Arianna Escudero
Texas Bar No. 24109065
902 E. 11th Street
Del Rio, Texas 78840
Tel: (830) 774-8300
Fax: (830) 768-0997
Email: VEscudero@trla.org
Application for admission pro hac vice
forthcoming

Hannah Elizabeth Samson
Texas Bar No. 24108766
902 E. 11th Street
Del Rio, Texas 78840
Tel: (830) 774-8300
Fax: (830) 768-0997
Email: HSamson@trla.org
Application for admission pro hac vice
forthcoming

Jung Lim Koo
Texas Bar No. 24105355
542 E. Main Street
Eagle Pass, TX 78852
Tel: (830) 752-6400
Fax: (830) 773-5806
Email: JKoo@trla.org
Application for admission pro hac vice
forthcoming

ATTORNEYS FOR PLAINTIFFS